# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

Nos. 16-3558 and 18-0701

Debra B. Sapp, Appellant,

v.

Robert L. Wilkie,
Secretary of Veterans Affairs, Appellee.

Bettie A.P. Sapp, Intervenor.

and

No. 16-2104

Bettie A.P. Sapp, Appellant,

v.

David J. Shulkin, M.D.,
Secretary of Veterans Affairs, Appellee.

Before SCHOELEN, BARTLEY, and MEREDITH, *Judges.*

## O R D E R

Here the Court addresses the issue of three docketed appeals that are related to a simultaneously contested claim for survivor benefits. Pending before the Court is the Secretary's opposed February 13, 2018, motion to consolidate two separate appeals by appellant Debra B. Sapp (Debra), #16-3558 and #18-0701. Bettie A.P. Sapp (Bettie), who has intervened in both appeals, filed an opposition.[1] In #16-3558, the Court docketed Debra's appeal of a February 17, 2016, Board of Veterans' Appeals (Board) decision that denied her surviving spouse status and, as a consequence, also denied entitlement to survivor benefits. In #18-0701, the Court docketed Debra's appeal of a separate February 17, 2016, Board decision that recognized Bettie as the veteran's surviving spouse, but denied her entitlement to survivor benefits.

In a third docket that is outside the Secretary's motion to consolidate, #16-2104, Bettie appealed her Board decision, the same Board decision currently on appeal in #18-0701. *See Sapp (Bettie A.P.) v. Shulkin*, U.S. Vet. App. No. 16-2104 (unpublished order, Feb. 17, 2017). On February 17, 2017, mandate issued in #16-2104 when the Court granted Bettie and the Secretary's joint motion for partial remand (JMPR), vacated Bettie's Board decision as to entitlement to service

---

[1] In the interest of clarity and to avoid the repetitive use of their identical last names, the Court will refer to Debra B. Sapp and Bettie A.P. Sapp by their first names.

connection for the veteran's cause of death and remanded that matter, and dismissed the appeal as to the issue of surviving spouse status.

This matter sua sponte was referred to a panel of the Court to address the consolidation motion and to consider the related issues of the import of Bettie's appeal and mandate in #16-2104 and whether VA's undisputed failure to comply with simultaneously contested claims procedures was prejudicial error. We hold that, because, in a simultaneously contested claim context, relevant statutory and regulatory provisions provide heightened notice requirements and special procedures that protect each claimant's opportunity to participate, VA's failure to comply with such procedures in Debra's and Bettie's simultaneously contested claim renders the adjudication process that occurred here unfair and therefore prejudicial.

Although the Secretary asks us to consolidate only Debra's appeals (#16-3558 and #18-0701), the Court concludes, for the reasons discussed below, that consolidation of those appeals is not sufficient to repair the evident prejudice. Rather, because mandate issued in Bettie's own appeal (#16-2104), we conclude that the only way to ensure fundamental fairness is for VA to readjudicate this simultaneously contested claim and ensure that VA's heightened procedural requirements for simultaneously contested claims are satisfied for both Debra and Bettie. Moreover, despite Debra's appeals being at different stages in the appellate process, in light of VA's undisputed failure to follow its own heightened procedural requirements, the Court concludes that dispositive action is proper at this juncture. Accordingly, the Court will deny the Secretary's motion to consolidate #16-3558 and #18-0701; recall mandate in #16-2104; consolidate all three appeals (#16-2104, #16-3558, and #18-0701); set aside both February 17, 2016, Board decisions; and remand these matters for further development, if necessary, and adjudication in accordance with the procedures that govern simultaneously contested claims.

## I. BACKGROUND[2]

### A. Procedural Background Prior to the February 2016 Board Decisions

Veteran Donald W. Sapp served in the U.S. Army from April 1968 to December 1969, including service in the Republic of Vietnam. Appellant's Brief (Br.) in #16-3558 at 2.[3] In a February 2006 rating decision, a VA regional office (RO) granted him service connection for type II diabetes mellitus, hypertension, upper extremity peripheral neuropathy, left leg amputation, and erectile dysfunction. Intervenor's Br. at 2-3. On April 30, 2010, Mr. Sapp died. Secretary's Br.[4] at 3.

---

[2] Due to the procedural posture of these appeals, a record of proceedings has not been filed in any of the relevant dockets. The factual recitation that follows is based on the Court's assimilation of facts from various briefs and motions filed across the relevant dockets. In the interest of clarity, the Court has limited, where possible, the citations to the primary source of information.

[3] All citations to the parties' court submissions are from #16-3558 unless otherwise specified.

[4] The Secretary filed two briefs in #16-3558, one on April 19, 2017, when Debra was self-represented, and one on February 15, 2018, following Debra securing counsel and filing a substitute brief. All references to the Secretary's brief are to the Secretary's February 15, 2018, brief.

In May 2010, Debra and Bettie each filed an application for entitlement to survivor benefits as the veteran's surviving spouse. *Id.* at 3. In July 2010, the RO issued two separate decisions. Intervenor's Br. at 3. One decision was issued only to Bettie, denying her surviving spouse status. *Id.* And a separate decision was issued only to Debra, denying her surviving spouse status on a different basis. *Id.* Both appellants submitted timely Notices of Disagreement (NODs) as to their respective decisions and each requested a decision review officer (DRO) hearing. *Id.* at 3-4.

In January 2011, Debra testified at a DRO hearing and in April 2011 Bettie testified at a DRO hearing. Secretary's Br. at 5. In December 2011, the RO issued separate Statements of the Case (SOCs) to Bettie and Debra, continuing its denials of spousal status on separate bases. *Id.* at 6. Neither SOC referenced VA's procedures on simultaneously contested claims nor did VA send the individual SOCs to both parties. *Id.* at 6, 16. Both timely perfected their independent appeals to the Board the next month. *Id.* at 6.

In October 2012, Bettie and Debra testified at separate Board hearings on different days before the same Board member (Board member John Crowley); however, due to technical difficulties with VA's recording system, Debra's hearing was not properly recorded and a transcript could not be rendered. *Id.* at 6.[5] Therefore, Debra was offered an opportunity to appear at a second Board hearing, and she responded indicating that she wished to appear at a second hearing. Accordingly, in July 2013, the Board issued a single decision captioned with both appellants' names and sent to both appellants, remanding the case to allow Debra to appear at a second Board hearing. *Id.* at 7.

In September 2013, Debra testified at a second Board hearing before Board member Eric Leboff. *Id.*[6] In August and November 2014, the Board informed Bettie and Debra respectively of their right to a new hearing because they participated in separate hearings before two different Board members and the law required that the Board member who conducts a hearing on appeal must participate in any decision made on that appeal. *Id.* Bettie waived her right to another Board hearing and Debra requested a third Board hearing. *Id.* In January 2015, the Board issued a single decision, captioned with both appellants' names and sent to both appellants, remanding the case to conduct Debra's hearing, which occurred in November 2015 with Board member Crowley. *Id.* at 7-8; *see* Debra's February 2016 Board decision at 2.

On February 17, 2016, the Board issued two separate decisions, but both contained the same Board docket number. The first decision, rendered by Board member Crowley, granted Bettie recognition as the veteran's surviving spouse, but denied her entitlement to service connection for the cause of the veteran's death.[7] The second decision, rendered by a panel of three Board members including Board members Crowley and Leboff, denied Debra surviving spouse status and denied entitlement to survivor benefits as a matter of law.[8] The Board provided a copy of the first decision to Bettie only and a copy of the second decision to Debra only. Secretary's Br. at 8.

---

[5] *See* BD. VET. APP. 1323123, 2013 WL 5198193 (July 19, 2013).

[6] *See* BD. VET. APP. 1502162, 2015 WL 1194801 (Jan. 15, 2015).

[7] *See* BD. VET. APP. 1606016, 2016 WL 1433291 (Feb. 17, 2016).

[8] *See* BD. VET. APP. 1606067, 2016 WL 1433342 (Feb. 17, 2016).

## B. Procedural History Following the February 2016 Board Decisions

Following the Board's issuance of two separate decisions, the appellants took different paths to contest the portions of the separate Board decisions that were adverse to their respective claim for survivor benefits, which resulted in three docketed appeals: #16-2104 (Bettie's appeal of her Board decision); #16-3558 (Debra's appeal of her Board decision); and #18-0701 (Debra's appeal of Bettie's decision). Below, the Court will describe the key events involved in all three docketed appeals, in chronological order. For clarity purposes, the Court will also provide a timeline of key events in an appendix.

On April 19, 2016, the Board Chairman received self-represented Debra's motion for reconsideration as to her February 2016 decision. #16-2104 Secretary's Opposed Motion to Stay Proceedings (July 22, 2016) Exhibit 2.

On June 16, 2016, Bettie, through counsel, filed a Notice of Appeal (NOA) with this Court as to her Board decision, and the Court thereby opened #16-2104. U.S. Vet. App. Docket No. 16-2104.

On July 22, 2016, the Secretary filed, in #16-2104, an opposed motion to stay proceedings pending disposition of Debra's motion for reconsideration, because the disposition "could affect the nature of the appeal before the Court." #16-2104 Secretary's Opposed Motion to Stay Proceedings at 2.

On August 26, 2016, the Court granted the Secretary's motion to stay proceedings in #16-2104 and ordered the Secretary to advise the Court of the Board Chairman's decision on Debra's motion for reconsideration. #16-2104 August 26, 2016, Court Order.

On September 9, 2016, the Board Chairman denied Debra's motion for reconsideration. #16-2104 Secretary's Response (Sept. 26, 2016) at 3-4. The Chairman also noted that an August 8, 2016, letter had been sent in error and was superseded by the September 9 letter.

On September 26, 2016, the Secretary notified the Court of the Board Chairman's denial of Debra's motion for reconsideration. #16-2104 Secretary's Response (Sept. 26, 2016).

On October 17, 2016, the Court lifted the stay of proceedings in #16-2104 pursuant to the Board Chairman's denial of reconsideration and ordered Bettie to file her principal brief within 60 days. #16-2104 Court Order (Oct. 17, 2016).

Also on October 17, 2016, self-represented Debra filed an NOA with this Court as to her February 2016 Board decision, and the Court thereby opened #16-3558. U.S. Vet. App. Docket No. 16-3558.

On November 21, 2016, the Secretary filed a notice to the Court in #16-2104 as to the existence of a potential party of interest in the proceeding, namely Debra. #16-2104 Secretary's Notice to Court (Nov. 21, 2016). Concurrently, the Secretary filed a similar notice to the Court in #16-3558 as to the existence of a potential party of interest in the proceeding, namely Bettie.

4

#16-3558 Secretary's Notice to Court (Nov. 21, 2016).[9] Both notices reflected that the Secretary's attorneys had conferred with Bettie's counsel, informing Bettie of Debra's appeal in #16-3558, and that Debra, because she was self-represented, would be mailed a copy of each notice.

Also, on November 21, 2016, Bettie filed a notice to intervene in #16-3558 pursuant to Rule 15(a) of the Court's Rules of Practice and Procedure (Rules), intervention "by right" as a person who participated in the proceedings before the Board. Notice of Bettie A.P. Sapp to Intervene (Nov. 21, 2016); *see* U.S. VET. APP. R. 15(a).

On December 14, 2016, the Court ordered the caption of #16-3558 revised to reflect Bettie as intervenor. #16-3558 Court Order (Dec. 14, 2016).

On January 5, 2017, Bettie's counsel and the Secretary's counsel participated in a Rule 33 telephonic briefing conference regarding #16-2104 that resulted in a JMPR. #16-2104 JMPR (Feb. 6, 2017). The JMPR noted that the dependency and indemnity compensation (DIC) claim at issue on appeal was simultaneously contested and identified Debra as a "potential party of interest" and explicitly requested that the Court not disturb the favorable determination granting Bettie surviving spouse status. #16-2104 JMPR at 2 (citing *Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part and dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009); *Sheets v. Nicholson*, 20 Vet.App. 463, 466-67 (2006); 38 C.F.R. § 20.3(p) (2016)). The parties agreed that vacatur and remand of "that portion" of Bettie's Board decision "that denied entitlement to service connection for cause of the [v]eteran's death" was required because the Board failed to provide adequate reasons or bases as to whether a medical opinion was warranted and whether the hearing officers, including the Board member who conducted Bettie's hearing (i.e., Board Member Crowley), properly fulfilled their duties under *Bryant v. Shinseki*, 23 Vet.App. 488, 496-97 (2010) (per curiam). *Id.* at 1, 6.

On February 17, 2017, the Clerk of the Court granted the JMPR in #16-2104, remanded "[t]he matter identified in the JMPR," dismissed the remaining issue (recognition of Bettie as the veteran's surviving spouse), and issued mandate. #16-2104 Court Order (Feb. 17, 2017).

On February 26, 2017, Bettie's counsel applied for a $6,794.75 Equal Access to Justice Act (EAJA) attorney fee award, which the Secretary did not contest. #16-2104 Secretary's Response to EAJA Application (Mar. 27, 2017).

On March 6, 2017, Debra submitted an informal brief in #16-3558. U.S. Vet. App. Docket No. 16-3558.

On March 30, 2017, the Court granted the EAJA application, issued mandate, and closed case #16-2104. #16-2104 Court Order (Mar. 30, 2017).

On April 19, 2017, the Secretary filed his responsive brief in #16-3558. U.S. Vet. App. Docket No. 16-3558.

---

[9] The Court notes that, although the Secretary filed concurrent notices in #16-2104 and #16-3558, the notices were signed by different appellate attorneys and different Deputy Chief Counsels. *Compare* #16-2104 Secretary's Notice to Court *with* #16-3558 Secretary's Notice to Court.

5

On May 8, 2017, an attorney filed a motion in #16-3558 to appear on behalf of Debra and, on May 10, 2017, sought leave to file a substitute brief. *Id.*

On May 24, 2017, the Court granted Debra's motion for leave to file a substitute brief in #16-3558 and ordered briefing no later than 60 days from the date of notice or 30 days after the completion of the Rule 33 staff conference. #16-3558 Court Order (May 24, 2017).

On July 18, 2017, Debra's counsel, the Secretary's counsel, and Bettie's counsel participated in a Rule 33 conference regarding #16-3558, which did not result in joint resolution of the appeal. U.S. Vet. App. Docket No. 16-3558.

On October 2, 2017, Debra filed her substitute opening brief in #16-3558. *Id.*

On January 4, 2018, the Secretary filed, in #16-3558, an opposed motion to stay proceedings, informing the Court that Debra and the Secretary were "currently in the process of discussing a possible alternative disposition of this case which may be mutually agreeable." #16-3558 Secretary's Motion to Stay at 1 (Jan. 4, 2018).

On January 5, 2018, Bettie filed, in #16-3558, a response opposing the Secretary's motion, contending that, should the appellant (Debra) and the Secretary agree "to [an] alternative disposition" in the absence of filing briefs, the "[i]ntervenor [(Bettie)] would be denied the opportunity to provide her position prior to the final disposition of this appeal." #16-3558 Intervenor Response at 1-2 (Jan. 5, 2018).

On January 16, 2018, the Court denied the Secretary's motion to stay proceedings in #16-3558 and ordered him to file his responsive brief on all parties, including a draft of any proposed joint motion for remand (JMR) or settlement agreement. #16-3558 Court Order Denying Stay (Jan. 16, 2018).

On February 12, 2018, Debra filed an NOA with this Court as to Bettie's February 2016 Board decision, and the Court thereby opened #18-0701. U.S. Vet. App. Docket No. 18-0701.

On February 13, 2018, the Secretary filed, in both #16-3558 and #18-0701, an opposed motion to consolidate the two appeals "in the interest of fairness to all parties and judicial efficiency." Secretary's Motion to Consolidate (Feb. 13, 2018).[10] The Secretary indicated that, although Debra, the appellant in both appeals, was unopposed to the motion, Bettie, who at that time was the intervenor only in #16-3558, opposed the motion. In the motion, the Secretary acknowledged that the Board decision on appeal in #18-0701 was already appealed by Bettie in #16-2104, but noted that the JMPR in that docket specifically did not address the issue of surviving spouse status as it was a favorable finding to Bettie. *Id.* at 3. The Secretary argued that consolidation of #16-3558 and #18-0701 was needed to "bring the affected parties under one docket number, [to] be consistent with the principles of due process, and [to] allow the Court to issue one decision in this single, mutually-exclusive, simultaneously contested claim." *Id.*

---

[10] The Court notes that, as of the Secretary's motion, the same lead appellate attorney was of record representing the Secretary in both #16-3558 and #18-0701. *Compare* U.S. Vet. App. Docket No. 16-3558 (Oct. 3, 2017, Notice of Appearance) *with* U.S. Vet. App. Docket No. 18-0701 (Feb. 12, 2018, Notice of Appearance).

Also on February 13, 2018, the Secretary filed, in both #16-3558 and #18-0701, an opposed motion to stay proceedings pending a decision on his motion to consolidate the appeals. Secretary's Motion to Stay (Feb. 13, 2018).

On February 15, 2018, the Secretary filed his responsive brief in #16-3558, including a proposed JMR. U.S. Vet. App. Docket No. 16-3558.

On February 28, 2018, Debra filed her reply brief in #16-3558, which in essence agreed with the proposed JMR. *Id.*

On March 12, 2018, Bettie filed, in #16-3558, an opposition to the Secretary's motion to consolidate and the Secretary's motion to stay proceedings. *Id.*

On April 16, 2018, Bettie filed her intervenor brief in #16-3558. *Id.*

On April 26, 2018, the Court stayed proceedings and ordered the Secretary, in both #16-3558 and #18-0701, to file a response to the intervenor's opposition to the motion to consolidate. U.S. Vet. App. Docket Nos. 16-3558 and 18-0701.

On May 10, 2018, the Secretary filed, in both #16-3558 and #18-0701, his response to the intervenor's opposition to the motion to consolidate. *Id.*

On July 31, 2018, the Court submitted #18-0701 to a panel for decision. U.S. Vet. App. Docket No. 18-0701.

On August 20, 2018, Bettie filed a notice to intervene in #18-0701, which the Court permitted under Rule 15(c) of the Court's Rules, due to extraordinary circumstances. Notice of Bettie A.P. Sapp to Intervene (Aug. 20, 2018); *see* #18-0701 Court Order (Sept. 20, 2018); U.S. VET. APP. R. 15(c).

On September 5, 2018, the Court submitted #16-3558 to a panel for decision. U.S. Vet. App. Docket No. 16-3558.

On September 20, 2018, the Court ordered the caption of #18-0701 revised to reflect Bettie as intervenor. #18-0701 Court Order (Sept. 20, 2018).

## II. SIMULTANEOUSLY CONTESTED CLAIMS

To determine whether consolidation of #16-3558 and #18-0701 is the appropriate way forward to resolve the procedural complexities here, the Court first turns to the Secretary's conceded error that VA failed to follow "mandatory statutory and regulatory procedures . . . . in the adjudication and development of [Debra's] claim," which resulted in two Board decisions, one favorable to Bettie (in part) and both unfavorable to Debra. Secretary's Br. at 10. As we explain in more detail below, the root of the current three-appeals problem is VA's improper treatment of the simultaneously contested claim for survivor benefits. Beginning with Bettie's and Debra's initial applications for survivor benefits in May 2010, VA has failed to comply with the heightened notice

7

requirements and special procedures for developing and adjudicating simultaneously contested claims. The Court holds that the notice and procedural defects here have deprived, at a minimum, Debra of her substantial right to a meaningful opportunity to participate in the processing and adjudication of the simultaneously contested claim, thereby fundamentally tainting the adjudications.

## A. Parties' Arguments

Debra and the Secretary argue that the Court should consolidate the appeals and vacate both February 17, 2016, Board decisions and remand the matters because VA failed to provide the unique protections afforded by law to claimants with simultaneously contested claims. Secretary's Br. at 9; Appellant's Reply Br. at 1. The Secretary argues that the RO committed procedural errors in adjudicating the simultaneously contested claim—failing to notify contesting claimants of the other claimant's rating decision, issuing two separate SOCs rather than a single SOC, and failing to notify contesting claimants of the content of their respective Substantive Appeals. Secretary's Br. at 15-16. He further argues that the Board similarly procedurally erred by failing to notify both parties of a joint hearing and the right to participate in that hearing, issuing two separate Board decisions, and initially failing to provide Debra notice of her appellate rights to challenge Bettie's February 2016 decision. *Id.* at 16-17. In supplemental briefing, the Secretary clarified that the Board should have issued a single decision to both Debra and Bettie, addressing the issues of recognition as the veteran's surviving spouse for purposes of establishing entitlement to survivor benefits and entitlement to service connection for the cause of the veteran's death. Secretary's Supplemental Memorandum of Law at 10.

As intervenor, Bettie argues that, although the Board failed to comply with the regulatory mailing requirements for simultaneously contested claims and "it would have been ideal for the Board to issue one decision," those errors were not prejudicial. Intervenor's Opposition to Motion to Consolidate at 7; Intervenor's Br. at 17-21. Specifically, Bettie argues a lack of prejudice because both Board decisions concluded that Bettie was married to the veteran at the time of his death and therefore Debra could not be recognized as the surviving spouse; Debra has had the opportunity to litigate the same issues, facts, and outcome in her underlying appeal from the February 2016 Board decision; and Debra had ample notice and opportunity to contest Bettie's February 2016 Board decision because she received the Secretary's November 21, 2016, notice to the Court and a priority mail letter sent by Bettie's counsel to Debra, notifying her of Bettie's appeal of her February 2016 Board decision. Intervenor's Br. at 18-19.

## B. The Simultaneously Contested Claim of Bettie and Debra

Survivor benefits[11] may entitle VA-recognized specified survivors of a deceased veteran to certain monthly payments, including DIC or death pension. *See* 38 U.S.C. § 1310 (DIC for death from a service-connected disability), § 1318 (DIC for certain veterans rated totally disabled), § 1541 (death pension for surviving spouses of veterans of a period of war); *see also* 38 C.F.R. § 3.152 (2019) (entitled "claims for death benefits"). A "claim" for DIC benefits constitutes a

---

[11] VA uses the term "death benefits" collectively for DIC, death pension, and accrued benefits. Here, the Court will use the term "survivor benefits" to mean the same.

"claim" for death pension benefits and vice versa. *Isenhart v. Derwinski*, 3 Vet.App. 177, 179-80 (1992); *see* 38 C.F.R. § 3.152.

In May 2010, Debra and Bettie each submitted a claim related to the death of the same veteran, Donald Sapp. *See* Secretary's Br. at 3; Intervenor's Br. at 3. Because both claimants are seeking survivor benefits based on their claimed status as the surviving spouse of the same veteran and because there can only be one surviving spouse, *see* 38 U.S.C. § 101(3) (defining "surviving spouse" as "a person" who was "the spouse" of a veteran at the time of the veteran's death); 38 C.F.R. § 3.50 (2019) (same); *see also, e.g.*, 38 U.S.C. § 103(a); 38 C.F.R. § 3.52 (2019), their claims for survivor benefits are simultaneously contested. *See* 38 C.F.R. § 20.3(l) (2019) (defining a simultaneously contested claim as including "the situation in which the allowance of one claim results in the disallowance of another claim involving the same benefit"); *see also Mason v. Shinseki*, 743 F.3d 1370, 1374 (Fed. Cir. 2014) ("It seems quite natural to refer to claims as 'simultaneously contested' if the allowance of one prevents the allowance of another."); 38 C.F.R. § 20.3(p) (2018).[12]

## C. Heightened Procedural Requirements for Simultaneously Contested Claims[13]

VA claimants are entitled to a fair adjudicative process that includes certain rights and procedural safeguards. *See, e.g., Thurber v. Brown*, 5 Vet.App. 119, 123 (1993) ("The entire thrust of [ ] VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process."); *Bernard v. Brown*, 4 Vet.App. 384, 392-94 (1993) (holding that VA claimants must be provided the "full benefits of . . . procedural safeguards" afforded by statutory and regulatory provisions establishing "extensive procedural requirements to ensure a claimant's rights to full and fair assistance and adjudication in the VA claims adjudication process"). In simultaneously contested claims, however, there are heightened procedural requirements to ensure that all interested parties receive a fair adjudicative process. In these cases, statutory and regulatory safeguards impose heightened notice requirements designed to protect each claimant's procedural due process rights by providing claimants a meaningful opportunity to participate in the adjudication of the simultaneously contested claim and ensuring the essential fairness of the adjudication of a simultaneously

---

[12] Effective February 19, 2019, § 20.3(p) was redesignated § 20.3(l). *See infra* n.13.

[13] The Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA) overhauled the process for appealing VA benefits decisions, including by creating different types of agency review and allowing claimants to select among those options. *See* Pub. L. No. 115-55, 131 Stat. 1105, § 2 (Aug. 23, 2017). Through VAIMA, Congress amended several statutory provisions relevant to this case, including 38 U.S.C. §§ 5103, 5104, 7105, and 7105A. In addition, as part of the implementation of VAIMA, VA amended, added, and redesignated several pertinent regulations, including renaming Part 19 of title 38 of the Code of Federal Regulations as "Board of Veterans' Appeals: Legacy Appeals Regulations," renaming subpart E of Part 20 "Appeal in Simultaneously Contested Claims," and renaming Subpart F of Part 20 "Legacy Appeal in Simultaneously Contested Claims." VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 177-84 (Jan. 18, 2019).

Although VAIMA was enacted in August 2017, the statutory amendments and the Secretary's regulations implementing VAIMA did not become effective until February 19, 2019. *See* VA Claims and Appeals Modernization, 84 Fed. Reg. at 170; VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (notification of effective date). However, because the Court reviews the law as it existed at the time of the Board decision, it will use pre-VAIMA statutes and regulations in its analysis and citations.

contested claim. As conceded by the parties and explained below, these special procedural requirements were not followed here.

*1. Notice Requirements*

We begin with the constitutional and statutory requirement of notice. Entitlement to veterans disability benefits is a property interest protected by the Due Process Clause. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009). An essential principle of procedural due process is that the deprivation of a protected interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). This constitutional right to be heard has "little value 'unless one is informed that the matter is pending and can choose for [her]self whether to appear or default, acquiesce or contest.'" *Noah v. McDonald*, 28 Vet.App. 120, 129-30 (2016) (quoting *Mullane*, 339 U.S. at 313).

To facilitate a claimant's meaningful participation in the adjudication of a claim, Congress has imposed on VA several notice requirements: notice of required information and evidence to substantiate a claim, timely notice of a decision affecting the provision of benefits, and notice of the right to and an explanation of the procedure for how to appeal such decision. 38 U.S.C. §§ 5103, 5104(a). To ensure the same meaningful participation when an adjudication involves multiple interested parties, Congress imposed special notice requirements for simultaneously contested claims. 38 U.S.C. § 7105A(a).

The statute governing simultaneously contested claims provides that, in such a claim, VA "shall promptly notify all parties in interest at the last known address" of an adverse action. 38 U.S.C. § 7105A(a). In a simultaneously contested claim, VA regulation provides that "[a]ll interested parties will be specifically notified of the action taken by the agency of original jurisdiction," 38 C.F.R. § 19.100 (2018), including furnishing to all interested parties and their representatives a copy of the SOC, 38 C.F.R. § 19.101 (2018). *See* 38 U.S.C. § 7105A. The SOC "will contain only information which directly affects the payment or potential payment of the benefit(s) which is (are) the subject of that contested claim." 38 C.F.R. § 19.101 (2018). And the content of a Board decision involving a simultaneously contested claim "will be limited to information that directly affects the issues involved in the contested claim." 38 C.F.R. § 19.8 (2018).

Several provisions also address the notification of the right to appeal. *See Thurber*, 5 Vet.App. at 123 ("The VA . . . RO[] must provide notice of the right to appeal in regular and in simultaneously contested claims."). In simultaneously contested claims, "[a]ll interested parties will be specifically notified . . . of the right and time limit for initiation of an appeal." 38 C.F.R. § 19.100 (2018), and "*any* claimant" may file an NOD or Substantive Appeal within the allotted time limits, 38 C.F.R. § 20.500 (2018). The time limit for a claimant to appeal a simultaneously contested claim is accelerated as compared to an uncontested claim. 38 U.S.C. § 7105(b)(1)(A) (providing for a one-year time limit to submit an NOD "[e]xcept in the case of simultaneously contested claims"). If a claim for entitlement to a specific benefit is contested by another party, a claimant has 60 days from the date of mailing of notification of the determination to file an NOD

and 30 days from the date of mailing of the SOC to file a Substantive Appeal. 38 U.S.C. § 7105A(a); 38 C.F.R. § 20.501(a), (b) (2018).

### *2. Meaningful Opportunity to Participate*

A fundamental role at the very essence of the nonadversarial, pro-claimant VA adjudication system is "affording a claimant a meaningful opportunity to participate effectively in the processing of his or her claim." *Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006). To do so, in addition to the statutory and regulatory provisions created to ensure that all interested parties receive adequate notice of the proceedings in a simultaneously contested claim, similar provisions also provide procedural safeguards designed to ensure that each claimant is afforded that substantive right. Just like any other VA benefits claimant, interested parties in a simultaneously contested claim are afforded the opportunity to submit argument and the opportunity to participate in a hearing.

Claimants must be afforded the opportunity to respond to the arguments of other parties in a simultaneously contested claim. To facilitate a contesting claimant's ability to respond, VA must furnish to other parties in interest the content of the other party's Substantive Appeal. 38 U.S.C. § 7105A(b); 38 C.F.R. § 19.102 (2018). Then, VA must allow an interested party 30 days from the date the content of the Substantive Appeal was furnished to submit a response. 38 U.S.C. § 7105A(b); 38 C.F.R. § 20.502 (2018).

Claimants for VA benefits are entitled to a hearing on their claims at both the RO and the Board. 38 C.F.R. §§ 3.103(c) (2018), 20.700(a) (2018). The same is true for "[a]ll interested parties" in a simultaneously contested claim. 38 C.F.R. § 19.100 (2018). If a hearing is scheduled for any party to a simultaneously contested claim, the other contesting claimants "will be notified and afforded an opportunity to be present" at the same hearing. 38 C.F.R. § 20.713(a) (2018). The hearing should proceed by first allowing the appellant to present opening testimony and argument, then any contesting party who wishes may present testimony and argument, followed by the appellant's opportunity to present rebuttal. *Id.* As usual during Board hearings, cross-examination is prohibited. *Id.*; *see* 38 C.F.R. § 20.700(c) (2018).

### **D. Application of Simultaneously Contested Claim Rules Here**

To protect the parties' procedural due process rights in a simultaneously contested claim, several safeguards apply. The Board's determination whether the proper procedures were followed in a simultaneously contested claim is a factual determination subject to the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *accord Garrison v. Nicholson*, 494 F.3d 1366, 1370 (Fed. Cir. 2007) (noting that Board determinations regarding compliance with VA's duty to notify are reviewed under the "clearly erroneous" standard). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Moreover, when the Court determines that the Board failed to follow applicable regulatory provisions, it shall hold unlawful and set aside the Board's decision as "not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *accord Kitchens v. Brown*, 7 Vet.App. 320, 325 (1995) (noting

11

that, where the Board fails to observe applicable law and regulation in reduction cases, the Court will set it aside as "not in accordance with law").

The Board, in both decisions on appeal, determined that the contested claims procedures were substantially complied with because the RO provided both parties "notice of the actions taken, . . . includ[ing] the issuance of statements of the case." Bettie's February 2016 Board decision at 15; Debra's February 2016 Board decision at 12. However, as the Secretary concedes, VA mishandled the processing and adjudication of this simultaneously contested claim from the initial May 2010 filing of two competing applications for the same VA benefit. *See* Secretary's Br. at 15 ("[T]he procedures for adjudicating simultaneously contested claims were not followed[.]"). Of the abundant notice and procedural requirements that VA affords to parties to a simultaneously contested claim, neither Debra nor Bettie were provided any. Below, the Court provides a chronological comparison between the undisputed actions VA took and the actions it should have taken, that led to the three appeals at issue here, two current appeals and one in which mandate issued in February 2017.

In May 2010, Bettie and Debra each filed an application for entitlement to survivor benefits as the veteran's surviving spouse and two months later the RO issued two separate decisions, individually denying each appellant recognition as the veteran's surviving spouse. Secretary's Br. at 3, 5. The Secretary states that Debra was "not notified of the action taken on [Bettie's] claim." Secretary's Br. at 15. The RO should have issued a single decision addressing both claims and promptly mailed it to both appellants, with notice that an NOD must be filed within 60 days. *See* 38 U.S.C. § 7105A.[14]

In January 2011, Debra testified at a DRO hearing by herself. Secretary's Br. at 5. Contrary to 38 C.F.R. § 20.713(a), it is undisputed that Bettie did not receive notification that such a hearing was to take place and that she was not afforded an opportunity to present testimony at that hearing. 38 C.F.R. § 20.713(a) (2018). Similarly, in April 2011, Bettie testified at a DRO hearing by herself and there is no dispute that Debra did not receive notification that such a hearing was to take place and that she was not afforded an opportunity to present testimony at that hearing. *Id*.

The RO then issued two separate SOCs. Neither SOC referenced VA's procedures on simultaneously contested claims. Secretary's Br. at 5-6. The RO should have issued a single SOC addressing both claims, containing information that directly affected the potential payment of the survivor benefits claims. *See* 38 C.F.R. § 19.101 (2018); *see also* Secretary's Br. at 16.

In January 2012, Debra and Bettie submitted separate VA Form 9s (Substantive Appeals) and both requested Board hearings. Secretary's Br. at 6. However, no party contends that the content of the respective Substantive Appeals was furnished to the other party. *See* 38 C.F.R. § 19.102 (2018). Nor were they given an opportunity to respond to the competing appeal of a claim for the same benefit. *See* 38 C.F.R. § 20.502 (2018); *see also* Secretary's Br. at 16.

---

[14] The Court notes that post-VAIMA the same notice and time-to-respond requirements apply to NODs. *See* 38 U.S.C. § 7105A(b)(1) (2019).

The Board conducted four independent hearings, three with Debra and one with Bettie. *See* Secretary's Br. at 6-8. Just like the RO's error at the DRO hearing, no party contends that as to any of those hearings the other party was informed of that hearing or notified of her right to participate. *See* 38 C.F.R. § 20.713 (2018); *see also* Secretary's Br. at 16-17.

As noted earlier, the Board issued two separate and different decisions on the same date, one for Bettie and one for Debra, and mailed each appellant only her own copy of her decision. Secretary's Br. at 8. All parties agree that, pursuant to 38 C.F.R. § 19.8, the Board should have issued a *single* decision addressing the simultaneously contested claim for survivor benefits as the veteran's surviving spouse. Intervenor's Opposition to Motion to Consolidate at 7; Secretary's Supplemental Memorandum at 10; Appellant's Reply Br. at 1.

The Court agrees with the parties and concludes that the Board clearly erred in its determination that VA "substantially complied with" the heightened procedural safeguards involved in adjudicating a simultaneously contested claim. Bettie's February 2016 Board decision at 15; Debra's February 2016 Board decision at 12. Contrary to the Board's finding, it is undisputed that VA committed multiple errors in the adjudication of this simultaneously contested claim for survivor benefits.

Most evident of these errors is the Board's failure to issue a *single* decision and instead issuing separate decisions addressing the simultaneously contested claim without properly notifying each claimant of the other's decision. As discussed above, § 19.8 provides that "[t]he content of the Board's decision . . . in appeals involving a simultaneously contested claim will be limited to information that directly affects the issues involved in the contested claim." However, "[a]ppellate issues that do not involve all of the contesting parties will be addressed in one or more separate written decisions . . . that will be furnished only to the appellants concerned." 38 C.F.R. § 19.8 (2018). Taken together, the regulation clearly provides that issues that directly affect all parties in a contested claim must be addressed in a single "decision" sent to all involved parties. *Id*. In contrast, the regulation instructs that issues unique to each individual appellant must be addressed in separate decisions sent only to the individual appellant concerned. *Id*. Based on a plain reading of § 19.8, the Court agrees with the parties that the Board's determination of Mr. Sapp's surviving spouse—a determination that involves both Bettie and Debra and directly affects entitlement to survivor benefits—should have been addressed in a single decision. *See Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015) ("Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure."); *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) ("[I]f the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994))); *see also Tropf*, 20 Vet.App. at 320 (The Court reviews the interpretation of regulations de novo.).

A possible explanation for the Board's issuance of separate decisions to each appellant, as advanced by Bettie, is the disparate number of Board members who heard testimony from each appellant. *See* Intervenor's Opposition to Motion to Consolidate at 2, 4. As noted above, Bettie testified at one Board hearing before Board member Crowley, but Debra testified at three Board hearings, two before Board member Crowley and one before Board member Leboff. As the Board noted in Debra's February 2016 decision, at that time all Board members who conducted hearings

in a case must participate in the adjudication of that case. Debra's February 2016 Board decision at 2-3 (citing 38 U.S.C. § 7107(c) (effective to Feb. 18, 2019), 38 C.F.R. § 20.707 (2015), and *Arneson v. Shinseki*, 24 Vet.App. 379 (2011)). Because Debra testified before two different Board members and because a Board panel can consist of no less than three members, 38 U.S.C. § 7102(a), it was required that Debra's claim for survivor benefits be adjudicated by three Board members. However, in the Board's view presumably, a panel of Board members was not needed to decide Bettie's claim for survivor benefits because she provided testimony before only a single Board member.

However, this explanation for the Board's issuance of separate decisions serves only to underscore the importance of ensuring that proper procedural safeguards in simultaneously contested claims are followed from the outset. Bettie and Debra both claimed survivor benefits based on the service of the same veteran. Had VA properly developed and adjudicated entitlement to survivor benefits not as separate claims but as a simultaneously contested claim in accordance with the statutory and regulatory procedural safeguards, there would have been no need to issue separate decisions based on the disparate number of Board members involved. That the Board issued separate decisions contrary to § 19.8 is prima facie evidence that the Board's finding regarding compliance with the simultaneously contested claim procedures is clearly erroneous.

### E. Prejudicial Effect of VA's Errors

Having determined that VA committed numerous errors, the Court turns next to whether these errors were prejudicial. In reviewing a Board decision, this Court must "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2); *see Shinseki v. Sanders*, 556 U.S. 396, 406-07 (2009) (holding that the "same kind of 'harmless-error' rule that courts ordinarily apply in civil cases" applies to the Court's review of Board decisions); *Simmons v. Wilkie*, 30 Vet.App. 267, 279-80 (2018). An error is prejudicial when it "affects a substantive right that a statutory or regulatory provision was designed to protect" and "affects the essential fairness of the adjudication." *Overton*, 20 Vet.App. at 434-35 (citing *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553 (1984)). An appellant generally bears the burden of demonstrating the prejudicial effect of an error. *Sanders*, 556 U.S. at 409-11; *Simmons*, 30 Vet.App. at 280.

In her supplemental memorandum of law, Debra addressed the effect of the Board's issuance of separate decisions and the resultant three appellate dockets. She argued that the Board's error directly affected her ability to appeal the adverse factual findings and conclusions of law in #16-2104 because the existence of separate Board decisions necessarily meant that the Court would only be able to address issues unfavorable to Bettie in adjudicating #16-2104, without consideration of issues unfavorable to Debra as an intervenor. Appellant's Supplemental Memorandum of Law at 1-2, 6-8. Moreover, she notes that, without the Court recalling mandate, the Board's failure to issue a single decision and its failure to properly notify her of Bettie's decision, which contained a factual finding adverse to Debra, prevented her from a full and fair opportunity to litigate the contested issue. *Id*. at 6. She argues that, without proper notice of her appellate rights as to Bettie's Board decision, she has been deprived an opportunity to be heard. *Id*. at 8.

14

The Secretary concedes that VA's errors resulted in prejudicial error and focuses on the entire adjudicative process. Secretary's Br. at 15-18. The Secretary urges that, because Debra "was not provided the unique protections afforded by law to claimants in simultaneously contested claims," "the Court should remand the Board's decision[s] for readjudication and development of this case, consistent with the legal provisions pertaining to simultaneously contested claims." *Id.* at 18; *see* Secretary's February 4, 2019, Response.

On the other hand, Bettie argues that neither Debra nor the Secretary has demonstrated prejudicial error because Debra had a meaningful opportunity to participate in the adjudicative process. Intervenor's Br. at 17. She highlights that Debra submitted evidence on her behalf and participated in four hearings before VA. *Id.* In addition, she notes that Debra was notified of her ability to intervene in #16-2104 here at the Court, but did not intervene or otherwise participate in Bettie's Court appeal. *Id.* at 19-21. Finally, she argues that, although the Board issued separate decisions, it reached the same conclusion based on the same evidence, that Bettie was legally married to Mr. Sapp at the time of his death. *Id.* at 18. Therefore, Debra could not be recognized as the surviving spouse as a matter of law. *Id.* at 21.

The Court agrees with Debra and the Secretary and finds that the procedural errors and notice defects addressed above affected, at a minimum, Debra's substantive right of adequate notice and proceedings that several statutory and regulatory provisions were designed to protect.[15] *See Overton*, 20 Vet.App. at 434-35. At several crucial periods in the separate adjudications of this simultaneously contested claim, VA failed to provide Debra adequate notice of the adjudication of Bettie's claim. By failing to provide adequate notice of Bettie's claim, Debra was deprived of participating in DRO and Board hearings with Bettie regarding the simultaneously contested claim and VA deprived Debra of providing any response to arguments advanced by Bettie. *See generally Cook v. Snyder*, 28 Vet.App. 330, 336-37 (2017) (describing "the important procedural nature and the critical role of Board hearings in the VA benefits system"), *aff'd sub nom. Cook v. Wilkie*, 908 F.3d 813 (Fed. Cir. 2018); *Arneson*, 24 Vet.App. at 382-83. Although Bettie argues that Debra had ample opportunity to submit evidence and argument on her behalf, without notice of the evidence and arguments being proffered by Bettie, Debra did not have the opportunity to properly respond in support of her own claim. *See generally Vazquez-Flores v. Shinseki*, 24 Vet.App. 94, 105 (2010) (noting that a lack of notice regarding "a key element needed to substantiate the claim" deprives the claimant of a meaningful opportunity to participate in the processing of her claim); *Overton*, 20 Vet.App. at 434-36 (holding that failure to provide claimant notice of what information was necessary to substantiate the claim "has the natural effect of producing prejudice" and generally would affect the fundamental fairness of the adjudication).

In addition, the Board's failure to follow the provisions that govern simultaneously contested claims resulted in disparate adjudication of the two claims. Namely, because the Board failed to provide a single hearing both appellants could attend, Bettie and Debra appeared at separate Board hearings and ultimately Debra testified at three Board hearings. Although the same

---

[15] The Court's prejudicial error analysis is focused on prejudice to Debra as the Board's determination regarding surviving spouse status was unfavorable to her. Although the Board's determination was favorable to Bettie, the Court notes that the Board's errors affected the adjudicative process as a whole and, therefore, similarly deprived Bettie of adequate notice and a meaningful opportunity to participate. However, the Board's recognition of Bettie as the veteran's surviving spouse mitigates against prejudice to her.

Board member (Crowley) conducted three of the four Board hearings, as a result of the procedural error, Bettie's claim was adjudicated by a single Board member while Debra's claim was adjudicated by a three-member panel.

The provisions that govern the adjudication of simultaneously contested claims are designed such that the same adjudicator, after gathering testimony and evidence from both contesting claimants, including responses to arguments raised by the opposing claimant, renders a decision in favor of one claimant over the competing interest of the other. The procedural errors evidenced above make it clear that, despite VA acknowledging a simultaneously contested claim, the decisions on the claim were rendered neither by the same adjudicators nor following the presentation of responsive testimony or evidence. In sum, the Court concludes that VA's errors throughout the adjudication of the simultaneously contested claim, and, in particular, the Board's failure to follow the proper notice and hearing provisions, affected the essential fairness of the adjudications, including the fairness of the process used to reach the underlying Board decisions in this case.

In addition, the Board's separate adjudications of the simultaneously contested claim directly led to the three separate docketed appeals, all of which are at different stages of the appellate process. Because the Board did not adjudicate the simultaneously contested claim in a single document and otherwise did not provide adequate notice to each claimant of the other claimant's Board decision, the appellants were able to take separate independent paths following receipt of their adverse decisions. Debra, while self-represented, filed a motion for reconsideration with the Board Chairman contesting her status as surviving spouse, while Bettie, through counsel, filed an NOA and secured a JMPR regarding the issue of service connection for the cause of the veteran's death. The fact that service connection for the cause of the veteran's death is pending before VA on behalf of Bettie while the appeal of surviving spouse status is still pending on behalf of Debra at this Court demonstrates the prejudicial effect of the disparate proceedings down below that allowed the appeals at this Court to proceed on separate tracks.

Finally, although Bettie argues that, because Debra cannot satisfy the four requirements for a deemed valid marriage, *see* 38 U.S.C. § 103(a), she could never prevail as a matter of law, Intervenor's Brief at 7, 17, 21, the Court cannot speculate on the outcome had Debra received proper procedures as provided by the applicable law and regulations. *See Arneson*, 24 Vet.App. at 389 (finding prejudice in the Board's failure to provide an opportunity for a hearing before all adjudicators because such error "could have altered" the Board's outcome); *Bryant*, 23 Vet.App. at 499 (finding a hearing officer's failure to fully explain the material issues and to suggest evidence that may have been overlooked was prejudicial because it created a lost opportunity for the claimant to try and submit needed evidence before the claim was adjudicated). For example, in reaching its determination that Bettie was the veteran's surviving spouse, the Board noted an absence of evidence contrary to Bettie's assertions that the break in continuity of cohabitation was due to the misconduct of the veteran and that divorce proceedings between the veteran and Bettie were never finalized. Bettie's Board decision at 7-8; *see* 38 C.F.R. § 3.53 (2019); 38 C.F.R. § 3.205(b) (2019) (both establishing that certain evidence will be sufficient to establish a finding of fact in the absence of conflicting information). However, because VA failed to provide Debra the content of Bettie's Substantive Appeal and Debra did not have the opportunity to participate in joint DRO and Board hearings, Debra lost the opportunity to respond to the arguments advanced

by Bettie in this simultaneously contested claim. The Court will not speculate on the outcome had VA followed the proper procedures for adjudicating this simultaneously contested claim from the outset.

### III. REMEDIES

Having established prejudicial error as to the February 17, 2016, Board decisions, the Court must now determine the appropriate remedy.

On January 3, 2019, the Court notified the parties that it was inclined to recall mandate as to #16-2104 and consolidate all three appeals to allow for a single resolution. We ordered the parties to show cause why we should not vacate both February 17, 2016, Board decisions and remand the matters. Debra and the Secretary agreed with the Court's proposed actions. Appellant's February 4, 2019, Response; Secretary's February 4, 2019, Response. Bettie avers that the Court should decide the appeals based on the record and pleadings in #16-3558 after allowing Debra the opportunity to submit a supplemental pleading to address Bettie's February 2016 Board decision. Intervenor's February 4, 2019, Response at 2. Bettie contends that her proposed remedy best preserves the Court's resources because the matter has already been exhaustively briefed by all parties and remand for a new Board decision would result in a new appeal on the same facts and contentions currently on appeal. *Id.* The Court is unpersuaded by her arguments.

### A. Mandate in #16-2104 is Sua Sponte Recalled

First we examine Bettie's appeal of her February 2016 decision, which is #16-2104. On February 17, 2017, the Court granted a JMPR vacating the issue of entitlement to service connection for the cause of the veteran's death, remanding for the Board to provide adequate reasons or bases as to whether a medical opinion was warranted and the hearing officers fulfilled their duties under *Bryant*, 23 Vet.App. at 496-97, and dismissing the remaining issue of her status as surviving spouse. The Court simultaneously issued mandate and, on March 30, 2017, granted an EAJA application for $6,794.75 in attorney fees, issued EAJA mandate, and closed the case.

Mandate finalizes and effectuates the Court's judgment on a matter. *See* 38 U.S.C. § 7291; U.S. VET. APP. R. 41(a). Once a party has had a full and fair opportunity to litigate, a court's judgment on the matter is final and final judgment forecloses successive litigation of the same claim. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Nevertheless, a court has the power to recall mandate where necessary to protect the integrity of its own processes. *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948); *Serra v. Nicholson*, 19 Vet.App. 268, 271 (2005). But "the sparing use of th[is] power demonstrates [that] it is one of last resort, to be held in reserve against grave, unforeseen contingencies." *Calderon v. Thompson*, 523 U.S. 538, 550 (1998); *see Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 114 F.3d 1513, 1522 (10th Cir. 1997) ("The limited nature of [mandate recall] power is a reflection of the importance of finality: once parties are afforded a full and fair opportunity to litigate, the controversy must come to an end and courts must be able to clear their dockets of decided cases.").

The exercise of the power to recall mandate is within the discretion of the Court; however, because recalling mandate is an extraordinary remedy, "such discretion may be exercised only for

17

good cause or to prevent injustice, and only when 'unusual circumstances exist sufficient to justify modification or recall of a prior judgment.'" *McNaron v. Brown*, 10 Vet.App. 61, 63 (1997) (quoting *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir. 1988)), *aff'd sub nom. McNaron v. Gober*, 121 F.3d 728 (Fed. Cir. 1997) (per curiam); *see Smith v. Shinseki*, 26 Vet.App. 406, 410 (2014) (per curiam order) (noting that "recall of mandate required the parties to show *both* good cause *and* unusual circumstances").

In *Serra* and *McNaron*, we noted several circumstances that our sister courts had found exceptional such that recall of mandate was warranted to protect the integrity of a court's own processes. *Serra*, 19 Vet.App. at 272 (compiling cases); *McNaron*, 10 Vet.App. at 63 (compiling the same cases). Those circumstances included judgment obtained by fraud, correction of clerical mistakes and judicial oversights, and where a petitioner had died prior to the issuance of mandate. *Serra*, 19 Vet.App. at 272; *McNaron*, 10 Vet.App. at 63; *see Sagnella v. Principi*, 15 Vet.App. 242, 245 (2001) (per curiam order). In *McNaron*, we additionally noted that other courts have also recalled mandate "based upon a subsequent change in the law, but only in 'significant instances where appellate courts have found special reason for disturbing repose and finality in the interest of justice.'" 10 Vet.App. at 63 (quoting *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 278 (D.C. Cir. 1971)); *see McNaron v. West*, 12 Vet.App. 334, 336 (1999) (per curiam order) (citing same); *see also Snyder v. Gober*, 14 Vet.App. 146, 147 (2000) (per curiam order) (recalling mandate when a subsequent en banc decision represented a "pivotal departure" from the existing law that served as the basis for the underlying decision).

The Court finds this simultaneously contested claim for survivor benefits and the prejudice to Debra due to the underlying procedural defects present good cause and the type of exceptional or extraordinary circumstance necessary to override the finality of an appeal. *See Briggs*, 334 U.S. at 304; *Smith*, 26 Vet.App. at 410. The Board's procedural and notice errors left Debra without a meaningful opportunity to be heard at the Court during the pendency of this appeal. *See Calderon*, 523 U.S. at 550. Bettie urges the Court not to recall mandate, arguing that Debra had the opportunity to intervene in #16-2104 to advocate on her behalf and chose not to. However, that Debra had the opportunity to intervene does not negate the injustice caused by the undisputed procedural errors committed by VA during the development of the simultaneously contested claim, notably, VA's failure to afford each of the contested claimants notice of and the opportunity to address arguments and evidence submitted by the other claimant down below. And, as indicated below, because those errors allowed Debra and Bettie to pursue separate paths to the Court, recall of mandate is necessary to ensure that there is only one decision that adjudicates which appellant is the surviving spouse of Donald Sapp.

Furthermore, recalling mandate will rejoin the issue of surviving spouse status with cause of death as part of the single simultaneously contested claim for survivor benefits and prevent any potential development or adjudication of the separate elements because of the Board's improper bifurcation of the underlying contested claim. *See Henderson v. West*, 12 Vet.App. 11, 20 (1998) ("[W]here a decision on one issue would have a significant impact upon another, and that impact in turn could render any review by this Court of the decision on the other [issue] meaningless and a waste of judicial resources, the two [issues] are inextricably intertwined." (internal quotations and alternations omitted)). Accordingly, the Court will recall mandate and withdraw the February

17, 2017, order granting the JMPR in #16-2104 that remanded the matter of entitlement to service connection for the cause of the veteran's death and dismissed the appeal as to the remaining issue.

A consequence of recalling mandate and withdrawing the Court's order is that Bettie is no longer a prevailing party in #16-2104. To be eligible for EAJA fees and expenses, an appellant must be a "prevailing party" and an EAJA application is "completely dependent upon the fate of the underlying case." *Serra*, 19 Vet.App. at 274. "[U]pon the recall of . . . mandate and withdrawal of the Court's order in a particular case, there is no longer a decision of the Court in which the appellant could be said to be a prevailing party." *Id.* (citing *Kawad v. West*, 12 Vet.App. 61 (1998) (per curiam order)). As indicated above, the order must be withdrawn, and therefore, Bettie cannot be said to have been a prevailing party in #16-2104. Thus, the Court concludes that the EAJA mandate must also be recalled and the corresponding order withdrawn in #16-2104.

### B. Consolidation of Appeals to Protect the Integrity of the Court's Process

Next, the Court turns to the issue of consolidation. The Secretary argues that the consolidation of #16-3558 and #18-0701 is necessary for reasons of judicial efficiency and fairness to both claimants. Secretary's Motion to Consolidate at 4. Specifically, he contends that consolidation "would bring the affected parties under one docket number, would be consistent with the principles of due process, and would allow the Court to issue one decision in this single, mutually-exclusive, simultaneously contested claim now on appeal." *Id.* at 3. The Secretary acknowledged that Bettie appealed her own Board decision in #16-2104, the same decision appealed by Debra in #18-0701, but indicated that surviving spouse status was not subject to the JMPR in #16-2104. *Id.* (noting that the JMPR "specifically requested that the Court 'not disturb the Board's favorable determination' regarding recognition as the surviving spouse").

In opposition, Bettie argues that, although consolidation of the appeals "would technically correct a notice defect," it would prejudice her and "provide no benefit to" Debra. Response in Opposition to Motion to Consolidate at 1, 7. She asserts that Debra had ample prior notice and opportunity to contest Bettie's decision in #16-2104 and that consolidation would deprive Bettie of expeditious resolution of her claim. *Id.* at 6, 8; *see id.* at 3 (asserting that "the fundamental issue of whether [Bettie] was the legal spouse of the [v]eteran has already been subject to repeated litigation").

In response to Bettie's opposition, the Secretary argued that surviving spouse status was not part of the appeal in #16-2104 because the Board made a favorable finding in that regard as it applies to Bettie and, therefore, that issue was not subject to the #16-2104 JMPR. Secretary's Response to the Court's April 26, 2018, Order at 4. In addition, he argues that, although Debra was provided notice of Bettie's appeal in #16-2104 and an opportunity to intervene in that appeal, because of the Board's favorable finding recognizing Bettie as the surviving spouse, had Debra intervened, she would not have been able to contest the Board's finding, even though it was unfavorable to her. *Id.* at 6-7.

Although Debra is unopposed to the Secretary's motion to consolidate and did not respond to Bettie's response, she advances similar arguments regarding #16-2104, namely that the Court did not have jurisdiction in #16-2104 to address the propriety of the Board's determination that

Bettie was the veteran's surviving spouse. Appellant's Supplemental Memorandum of Law at 1-5. She thus contends that, even if she had intervened in #16-2104, she would not have been able to contest the Board's finding. *Id.* at 1-2.

The Court finds Bettie's arguments unpersuasive. Consolidation of appeals in this Court is governed by Rule 3(e) of the Court's Rules. U.S. VET. APP. R. 3(e). Pursuant to that Rule, "[a]ppeals may be consolidated by order of the Court on its own initiative or on a party's motion." *Id.* We further note that the Federal Rules of Civil Procedure provide that, when "actions . . . involve a common question of law or fact, the court may . . . consolidate the actions." FED. R. CIV. P. 42(a); *see Demery v. Wilkie*, 30 Vet.App. 430, 442 (2019) (per curiam order) (looking to the Federal Rules of Civil Procedure for guidance). This Court has consolidated appeals on its own initiative to address specific questions of fact or law. *See, e.g.*, *Bove v. Shinseki*, 25 Vet.App. 136, 137 (2011) (per curiam order) (sua sponte consolidating four appeals "for the sole purpose of addressing whether the 120-day filing period is subject to equitable tolling"); *Young v. Shinseki*, 22 Vet.App. 461, 464 (2009) (noting that the Court had ordered the consolidation of two pending appeals stemming from two different Board decisions on the same claim for disability benefits); *Jones v. Derwinski*, 2 Vet.App. 7, 7 (1991) (en banc order) (sua sponte consolidating appeals "for all purposes").

As noted above, the Secretary and Debra support consolidation of #16-3558 and #18-0701 to "allow the Court to issue one decision in this single, mutually-exclusive, simultaneously contested claim now on appeal." Secretary's Motion to Consolidate at 3-4; *see* Appellant's Reply Br. in #16-3558 at 1. Both argue, however, that the additional consolidation of #16-2104 is not needed because surviving spouse status was not addressed in #16-2104. Bettie opposed consolidation in any combination because the propriety of the Board's determination recognizing her as the veteran's surviving spouse has already been litigated. Response in Opposition to Motion to Consolidate at 3.

All parties overlook that the simultaneously contested claim is not the narrow question of who is properly recognized as the surviving spouse, but instead is a claim for survivor benefits. Moreover, because the Secretary's motion to consolidate #16-3558 and #18-0701 does not address the effect of the appeal in #16-2104—namely, the Court order granting the JMPR that did not disturb the Board's finding recognizing Bettie as the veteran's surviving spouse—the Court concludes that the Secretary's motion must be denied. *See* U.S. VET. APP. R. 3(e).

The Secretary is correct that the Court should issue one decision in this simultaneously contested claim for survivor benefits—and given that fact, we must withdraw mandate in #16-2104 so that all appeals regarding the issue of which appellant is the surviving spouse of Donald Sapp for VA benefit purposes may be consolidated and remanded as one to the Board for the conduct of proper notice and procedures and issuance of a single Board decision. *See Overton*, 20 Vet.App. at 435 ("Any error that renders a claimant without [a] meaningful opportunity [to participate effectively in the processing of his or her claim] must be considered prejudicial because such error would indeed have affected the essential fairness of the adjudication."); *see also* 38 U.S.C. § 7252(a).

## C. Recognition of Bettie as Mr. Sapp's Surviving Spouse

As noted above, the parties argued that recall of mandate in #16-2104 was not needed because the Board's recognition of Bettie as Mr. Sapp's surviving spouse was not subject to the JMPR because it was a favorable finding. Specifically, the Secretary noted that the parties cited to the Court's decisions in *Sheets* and *Medrano* and expressly requested that the Court not disturb the Board's favorable determination regarding recognition of Bettie as the surviving spouse. Secretary's Response to the Court's September 24, 2018, Order at 4-5; *see* February 2017 JMPR at 1-2 (citing *Sheets*, 20 Vet.App. at 466-67, and *Medrano*, 21 Vet.App. at 170).

The Court found those arguments unpersuasive because the parties overlooked that surviving spouse status is not, by itself, a claim for benefits, but is instead one element of the claim for survivor benefits. However, the Court additionally stresses that our decision today does not run afoul of the proscription against disturbing or reversing findings of fact favorable to claimants as espoused in *Sheets* and *Medrano*.

Although the Court is recalling mandate in #16-2104 and setting aside both February 2016 Board decisions, the Court has not reviewed the merits of the Board's factual determination regarding surviving spouse status. The Court has determined, based on the undisputed arguments from all parties, that the Board erred in not ensuring that VA complied with the heightened procedural safeguards implicated in simultaneously contested claims. Because the process by which the Board reached its factual findings was defective and prejudicial, the Board must readjudicate the simultaneously contested claim. However, the Court expresses no opinion regarding the merits of the Board's factual findings regarding surviving spouse status. Certainly, we are not setting aside or reversing any factual determination based on finding it clearly erroneous. *See* 38 U.S.C. § 7261(a)(4) (providing that the Court may only set aside or reverse a finding of material fact if such a finding is clearly erroneous). Although the Court's action will result in the Board revisiting its factual determinations regarding surviving spouse status, it is free to arrive at the same factual conclusion, or an alternative conclusion, after it ensures that the heightened procedural safeguards are satisfied.

Moreover, although the Court in *Sheets* and *Medrano* instructed that the Court may not disturb or reverse factual findings favorable to a claimant, that prohibition is not implicated in this case. The statute governing the Court's scope of review provides that the Court, "to the extent necessary to its decision and when presented, shall . . . in the case of a finding of material fact adverse to the claimant . . . hold unlawful and set aside or reverse such finding if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4) (as amended by the Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401 (Dec. 6, 2002) (providing for the Court to reverse or set aside only findings of fact "adverse to the claimant")); *see Roberson v. Principi*, 17 Vet.App. 135, 138-42 (2003) (per curiam order) (discussing the addition of the words "adverse to the claimant" to section 7261(a)(4)).

Section 7261(a)(4) clearly provides the Court the authority to set aside or reverse a factual finding adverse to the claimant. In *Roberson*, the Court, relying on the addition of the language "adverse to the claimant" to section 7261(a)(4), stated that "the Court is clearly without authority to reverse findings of fact that are beneficial to claimants." 17 Vet.App. at 139. In *Sheets*, the

Court, relying on *Roberson*, stated that the Court "cannot disturb a factual finding that is favorable to the appellant." 20 Vet.App. at 466-67. And in *Medrano*, the Court, relying on section 7261(a)(4) and *Roberson*, stated that "[t]he Court is not permitted to reverse findings of fact favorable to a claimant." 21 Vet.App. at 170. In reaching that conclusion, the Court focused on what is outside the Court's scope of review based on affirmative statutory language defining the Court's scope of review. In those cases, which all involved a single appellant, it was proper for the Court to make such an inference because whether a material finding of fact is favorable or adverse to a single appellant is a mutually exclusive determination.

However, such exclusivity is not present in simultaneously contested claims. The very nature of a simultaneously contested claim means that a material factual determination will be favorable to one claimant while at the same time being adverse to another. *See Mason*, 743 F.3d at 1374; 38 C.F.R. § 20.3(l). As exemplified here, the factual findings that led the Board to conclude that Bettie was the surviving spouse were favorable to her and adverse to Debra. We do not read *Roberson* and its progeny as precluding the Court, in reviewing a simultaneously contested claim, from disturbing a factual finding adverse to the claimant seeking reversal even though that finding was favorable to the other appellant. Holding otherwise would deprive the adversely affected appellant of her right to meaningful judicial review.

The matter is complicated in this case, however, by the Board's undisputed failure to follow proper procedures when it, among other errors, adjudicated the simultaneously contested claim in separate decisions. Although the Board's errors led it to issue two separate decisions, it made the same findings of material fact in determining that Bettie was the proper surviving spouse. *Compare* Bettie's February 2016 Board decision at 3 *with* Debra's February 2016 Board decision at 4. Although the Board did not list each appellant on the other appellant's Board decision, these findings were favorable to Bettie in both decisions and adverse to Debra in both decisions. The Board's error in issuing separate Board decisions, however, would not affect our scope of review.

### D. Set Aside and Remand Both Board Decisions

Having found prejudicial error in VA's failure to comply with the special procedures that are required as to this simultaneously contested claim, the Court consolidates appeals #16-2104, #16-3558, and #18-0701, and concludes that both February 17, 2016, Board decisions (*Bettie A.P. Sapp*, BVA 12-04 871 (Feb. 17, 2016), *Debra B. Sapp*, BVA 12-04 871 (Feb. 17, 2016); *see supra* n. 7-8) should be set aside and remanded for further development, if necessary, and readjudication in accordance with the procedures that govern simultaneously contested claims. *See* 38 U.S.C. § 7261(a)(3)(A).

On remand, both appellants are free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). "A remand is meant to entail a critical examination of the justification for the decision" by the Board. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims). In particular, the Board should consider whether corrective measures can be taken to cure the prejudicial effect of certain evidence (e.g., hearing testimony) that was developed without adherence to the procedural safeguards for simultaneously

22

contested claims or if such prejudicial effect is incurable and that evidence must be developed anew.

## IV. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the Secretary's February 13, 2018, motion to consolidate the appeals in #16-3558 and #18-0701 is denied. It is further

ORDERED, in #16-2104, that the Court's February 17, 2017, mandate and March 30, 2017, EAJA mandate are RECALLED. It is further

ORDERED, in #16-2104, that the February 17, 2017, order granting a joint motion for partial remand and dismissing the remaining issue and March 30, 2017, order granting Bettie's application for attorney fees under EAJA are WITHDRAWN. It is further

ORDERED that the appeals in #16-2104, #16-3558, and #18-0701 are consolidated. It is further

ORDERED, in #16-2104, #16-3558, and #18-0701, that the respective February 17, 2016, Board decisions are SET ASIDE. It is further

ORDERED, in #16-2104, #16-3558, and #18-0701, that the matters addressed in the respective Board decisions are REMANDED for further development, if necessary, and readjudication in accordance with the procedures that govern simultaneously contested claims.

DATED: November 27, 2019                                              PER CURIAM.

Appendix

| BETTIE A.P. Sapp's claim for survivor benefits | | DEBRA B. Sapp's claim for survivor benefits |
|---|---|---|
| | **April 30, 2010** Veteran Donald W. Sapp dies | |
| Bettie files claim | **May 2010** | Debra files claim |
| RO denies claim | **July 2010** | RO denies claim |
| Bettie files NOD and requests DRO hearing | | Debra files NOD and requests DRO hearing |
| | **January 2011** | Debra testifies at a DRO hearing |
| Bettie testifies at a DRO hearing | **April 2011** | |
| RO issues SOC to Bettie | **December 2011** | RO issues SOC to Debra |
| Bettie perfects her appeal and requests Board hearing | | Debra perfects her appeal and requests Board hearing |
| Bettie testifies at a Board hearing | **October 2012** | Debra testifies at a Board hearing |
| | **July 2013** Board issued a single decision remanding for further development | |
| | **September 2013** | Debra testifies at a second Board hearing |
| Board informed Bettie of her right to a new hearing; Bettie waives | **August 2014** | |
| | **November 2014** | Board informed Debra of her right to a new hearing; Debra requests third hearing |
| | **January 2015** Board issued a single decision remanding to afford Debra the third hearing | |
| | **November 2015** | Debra testifies at a third Board hearing |
| Board denies Bettie's claim | **February 17, 2016** | Board denies Debra's claim |
| | **April 19, 2016** | Board Chairman receives Debra's request for reconsideration |
| Bettie (represented) files an NOA at the Court regarding her Board decision (#16-2104) | **June 16, 2016** | |
| Secretary files an opposed motion to stay proceedings pending the Board Chairman's decision on Debra's motion for reconsideration | **July 22, 2016** | |

| BETTIE A.P. Sapp's claim for survivor benefits | | DEBRA B. Sapp's claim for survivor benefits |
|---|---|---|
| Court grants the Secretary's motion | **August 26, 2016** | |
| | **September 9, 2016** | Board Chairman denies Debra's motion for reconsideration and notes that an August 8, 2016, letter had been sent in error and was superseded by this letter. |
| Secretary informs Court that Debra's motion for reconsideration has been denied | **September 26, 2016** | |
| Court lifts stay in #16-2104 | **October 17, 2016** | Debra (self-represented) files NOA with Court regarding her Board decision (#16-3558) |
| Secretary informs Court of potential party of interest (Debra) in #16-2104 | **November 21, 2016** | Secretary informs Court of potential party of interest (Bettie) in #16-3558 |
| | | Bettie files notice to intervene |
| Court orders parties to initiate Rule 33 Conference | **November 30, 2016** | |
| | **December 14, 2016** | Court changes caption of #16-3558 to reflect Bettie as intervenor |
| Rule 33 Conference held | **January 5, 2017** | |
| Parties file JMPR | **February 6, 2017** | |
| Court grants JMPR | **February 17, 2017** | |
| Court issues mandate in #16-2104 | | |
| Bettie's attorney files for EAJA fees | **February 26, 2017** | |
| | **March 6, 2017** | Debra files informal brief |
| Court grants EAJA application | **March 30, 2017** | |
| Court issues EAJA mandate and closes #16-2104 | | |
| | **April 19, 2017** | Secretary files brief |
| | **May 8, 2017** | Counsel files appearance on behalf of Debra |
| | **May 10, 2017** | Counsel files motion for leave to file a substitute brief |

| BETTIE A.P. Sapp's claim for survivor benefits | | DEBRA B. Sapp's claim for survivor benefits |
|---|---|---|
| | **May 24, 2017** | Court grants motion for leave to file a substitute brief |
| | **May 26, 2017** | Court orders parties to initiate Rule 33 Conference |
| | **July 6, 2017** | Rule 33 Conference held |
| | **October 2, 2017** | Debra files substitute brief |
| | **January 4, 2018** | Secretary files opposed motion to stay proceedings due to a possible joint resolution |
| | **January 5, 2018** | Bettie files opposition to the Secretary's motion |
| | **January 16, 2018** | Court denies the Secretary's motion |
| Debra (represented) files an NOA regarding Bettie's Board decision (#18-0701) | **February 12, 2018** | |
| Secretary files opposed motion to consolidate #18-0701 with #16-3558 and an opposed motion to stay proceedings pending resolution of the motion to consolidate | **February 13, 2018** | Secretary files opposed motion to consolidate #16-3558 with 18-0701 and an opposed motion to stay proceedings pending resolution of the motion to consolidate |
| | **February 15, 2018** | Secretary files responsive brief, including a proposed JMR |
| | **February 28, 2018** | Debra files a reply brief, agreeing to the proposed JMR |
| | **March 12, 2018** | Bettie files opposition to Secretary's motion to consolidate |
| | | Bettie files opposition to Secretary's motion to stay proceedings |
| | **April 16, 2018** | Bettie files intervenor brief |
| **April 26, 2018** Court issues single order, staying proceedings in both #16-3558 and #18-0701 and ordering the Secretary to respond to Bettie's opposition to the motion to consolidate | | |
| **May 10, 2018** Secretary files response to Court's April 26, 2018, order | | |
| Court submits #18-0701 to panel for consideration | **July 31, 2018** | |
| Bettie files notice to intervene | **August 20, 2018** | |
| | **September 5, 2018** | Court submits #16-3558 to panel for consideration |

| BETTIE A.P. Sapp's claim for survivor benefits | DEBRA B. Sapp's claim for survivor benefits |
|---|---|
| Court changes caption of #18-0701 to reflect Bettie as intervenor | **September 20, 2018** |
| **September 24, 2018** Court orders all parties to submit memoranda of law | |
| **January 3, 2019** Court orders all parties to submit memoranda of law | |